IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. DKC-19-452 |
| | * |
| NJUH VALENTINE FOMBE | * |
| | * |

\*\*\*\*\*\*\*

**GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS**

The Court should deny the defendant's Motion to Suppress, ECF No. 121, because he lacks standing to challenge the search of his purported wife's phone. And even if the defendant had standing—which he does not—law enforcement seized the phone under its border search authority, manually searched the phone and found evidence of a crime, and then conducted a forensic search of that phone after obtaining a valid search warrant.

**Relevant Background**

On September 23, 2019, an indictment was returned charging Njuh Valentine Fombe (the "defendant" or "Fombe") and his co-conspirators with conspiracy to commit wire fraud, conspiracy to commit money laundering, and aggravated identity theft. ECF No. 1. On September 25, 2019, law enforcement executed search and arrest warrants based on the indictment but were not able to locate Fombe. Fombe's wife, Anais Thalia Ossele Massaba ("Ossele Massaba"), was informed by law enforcement that a federal arrest warrant had been issued for Fombe. Shortly thereafter, law enforcement determined that Fombe had fled the United States to Mexico. On February 5, 2020, law enforcement spoke again with Ossele Massaba and reiterated to her that Fombe was under indictment and considered a fugitive. Ossele Massaba stated that, after the search warrant was executed at her and Fombe's residence, she and Fombe met with an attorney.

Afterwards, Fombe left and did not tell her his location, though she later received a phone call from Fombe that he was in Canada.

On May 21, 2022, after Ossele Massaba and her children landed at Baltimore Washington International Airport ("BWI") and sought admission to the United States, Ossele Massaba was detained by law enforcement. During the detention, law enforcement seized Ossele Massaba's cellular telephone ("the Phone"), an iPad Pro, and two other iPads pursuant to its border search authority. Ossele Massaba then voluntarily provided law enforcement with the password to the devices.

During a manual search of the Phone, agents observed a picture of a Honduran passport bearing a photo of Fombe but in the name of "Rosnell Eduardo Martinez Garcia."[1] *See* Ex. A (photograph taken during manual search). Law enforcement seized the Phone and provided it to Homeland Security Investigation ("HSI") agents for forensic imaging on May 23, 2022. On June 3, 2022, all four devices (including the Phone) were returned to Ossele Massaba at BWI.

HSI forensically examined the Phone and other electronic devices for further evidence of the fraud related to the defendant's use of the Honduran passport. This examination revealed that the owner of the device was "Anais Thalia" and that the Apple ID associated with the Phone was anaisthalia_1@icloud.com. Further review of the Phone also revealed, in plain view, evidence that Ossele Massaba and Fombe were engaged in unemployment insurance fraud involving Maryland victims. This fraud included multiple individuals' personal identifying information and

---

[1] Further inquiries were made with the government of Honduras regarding the Honduran passport in the name of "Rosnell Eduardo Martinez Garcia." The government of Honduras advised that the passport was genuine and issued by the government of Honduras. Given that Fombe's picture appears on the passport with the false identifiers, the passport is what is commonly referred to as a "fraudulently obtained genuine passport."

Maryland unemployment insurance debit cards.  *See* Ex. B at ¶ 30 (Affidavit in Support of Application for Search Warrant).

On or about November 17, 2022, Special Agent Jenchira Vogel with the U.S. Department of Labor, Office of the Inspector General, sought and received a search warrant authorized by the Honorable Ajmel A. Quereshi, 22-mj-3026-AAQ.  The warrant allowed further search of the Phone for evidence related to violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 371 (conspiracy to commit an offense against the United States), 1349 (conspiracy to commit mail fraud and wire fraud), and 1028A (aggravated identity theft).  *See* Ex. B.

## Argument

**I.  THE DEFENDANT LACKS STANDING TO SUPPRESS THE CONTENTS OF THE PHONE.**

The defendant lacks standing to move to suppress any of the contents in the Phone because he lacks "a legitimate expectation of privacy" in the Phone.  *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)).  Suppression is a remedy only for "those whose rights the police have violated." *Alderman v. United States*, 394 U.S. 165, 174 (1969).  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978); *see also United States v. Wilford*, 961 F. Supp. 2d 740, 757 (D. Md. 2013) (Hollander, J.) ("[A] defendant has no standing to challenge the admission of evidence illegally obtained from co-conspirators.").

The defendant admits that his wife "was in the actual and constructive possession" of the Phone "when it was searched and seized as his wife crossed an international border."  ECF No. 121 at 2.  The Court should deny the defendant's Motion on that basis alone.

Despite this fatal flaw, the defendant argues that he has standing to suppress information obtained from social media accounts that were contained on the Phone. *Id.* at 5. The defendant, however, does not identify any particular social media information that should be suppressed nor why he has a reasonable expectation of privacy in such information if it was found on Ossele Massaba's phone.

Tellingly, the defendant cites zero cases to support his standing argument. Instead, he cites *United States v. Rusher*, where the Fourth Circuit held that the defendant husband "*cannot* demonstrate such an expectation in his wife's purse." *Id.* at 5-6 (citing 966 F.2d 868, 875 (4th Cir. 1992)) (emphasis added). The *Rusher* opinion explained that in determining "if a person has a reasonable expectation of privacy in property held by another," a court may consider "whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property." 966 F.2d at 875.

Both factors weigh against the defendant. The parties agree that Ossele Massaba actually and constructively owned the phone. The defendant has not identified any information within that phone over which he had ownership or possessory interest. Nor has he explained what precautions he took to exclude others from any information within Ossele Massaba's phone. Indeed, the evidence indicates that he took no precautions because once Ossele Massaba voluntarily gave law enforcement her password, they were able to extract the contents of the phone.

The defendant's attempts to distinguish *Rusher* are without merit. First, the defendant's claim that, in *Rusher*, "it is highly doubtful that the wife's contraband . . . added anything to the punitive exposure of the three defendants" is entirely irrelevant. Regardless of the punitive exposure to a defendant, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those who rights were violated by the search itself, not by those who

are aggrieved solely by the introduction of damaging evidence." *Alderman*, 439 U.S. at 171-72. Second, the fact that, in *Rusher*, the wife repeatedly engaged in behavior indicating a conspiracy is also wholly irrelevant to the issue of standing. "Fourth Amendment rights are . . . personal rights," which co-defendants "lack standing to assert vicariously." *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988). As the Supreme Court found in *United States v. Padilla*, "[c]o-conspirators and codefendants have been accorded no special standing." 508 U.S. at 82 (quoting *Alderman*, 394 U.S. at 171-72). Finally, the defendant's claim that *Rusher* is distinguishable because the content of the wife's purse was immediately identified as contraband is also of no moment. There is no case law suggesting that standing rises and falls with whether the incriminating results of the search are readily apparent.

In a factually similar case, *Casella v. Borders*, the Fourth Circuit held that a girlfriend lacked reasonable expectation of privacy over nude photos of herself that were contained on a cellphone that she had lent to her boyfriend. *See* 404 F. App'x 800, 801 (4th Cir. 2010). There, the court observed that the girlfriend "allege[d] no facts indicating she exercised a right to control the cell phone or its contents after giving the phone to [the boyfriend]. She 'undoubtedly hoped and intended' that the images would not be viewed by anyone other than [the boyfriend], but hopes and intentions do not make Fourth Amendment rights." *Id.* at 803. Like *Casella*, the defendant probably hoped that no one other than his wife would see evidence of his fraudulent passport. *See also Johnson v. Allen*, 416 F. Supp. 3d 550, 560 (E.D.N.C. 2018) (father had no standing to challenge search of tablet that he had given to his daughter). Likewise, the defendant here has made no attempt to maintain control over any of the information contained on the Phone.

The defendant lacks standing to suppress the contents of the Phone.

## II. THE SEARCH AND SEIZURE OF THE PHONE WAS PURSUANT TO VALID BORDER SEARCH AUTHORITY

The defendant has no basis to contest the initial seizure and manual search of the Phone. That search and seizure falls within the routine border search doctrine and thus law enforcement did not need "reasonable suspicion, probable cause, or warrant" to conduct the search. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985)[2]; *see also Alasaad v. Mayorkas,* 988 F.3d 8, 18 (1st Cir. 2021) (manual searches of electronic devices at the border "are routine searches and need not be supported by reasonable suspicion"). The defendant has no basis to contest that initial seizure and manual search.

The defendant also has no basis to challenge the subsequent forensic examination of the Phone. The Government agrees with the defendant that "a forensic border search of a phone must be treated as nonroutine" and is "permissible only on a showing of individualized suspicion." *United States v. Kolsuz*, 890 F.3d 133, 144 (4th Cir. 2018), *as amended* (May 18, 2018). This standard is met when an officer can point to "specific articulable facts" and rational inference that can be drawn from those facts indicating that criminal activity "may be afoot." *See Terry v. Ohio*, 392 U.S. 1, 21, 30 (1968). Here, law enforcement had individualized suspicion to conduct such examination.

First, it is undisputed that at the time of such seizure, Ossele Massaba's husband, the defendant, was a fugitive from justice living abroad. ECF 121 ("In September 2019 Mr. Fombe became aware of the investigation against him when [his] phone was being searched [by] law enforcement officers. Instead of surrendering to the authorities [the defendant] fled the area and ultimately the United Kingdom. He lived in Mexico, Honduras, and finally the United Kingdom

---

[2] The Government agrees with the defendant that the border search doctrine applies here because Ossele Massaba was searched after arriving at BWI from London. ECF No. 121 at 2-3.

with his family.") Even before law enforcement conducted the manual search of the Phone, they had reasonable suspicion to believe that the Phone may contain information related to Ossele Massaba's fugitive husband's whereabouts. This reasonable suspicion led officers to believe the Phone could produce evidence of a crime, such as obstruction of justice and/or harboring a fugitive.  Then, during the manual search of the Phone, law enforcement saw a fraudulent passport bearing the defendant's face but the identifying information of another.  *See* Ex. A.  This information gave law enforcement an additional basis to examine the Phone forensically.  At that time, as Special Agent Vogel explains in her search warrant affidavit, the officers had, at minimum, reasonable suspicion that the Phone would contain (additional) evidence of criminal violations, such as violations of 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other documents) and 8 U.S.C. § 1325 (improper entry by alien).  *See* Ex. B at ¶ 28.  As such, a forensic search of the Phone was clearly supported by individualized suspicion, as required by the Fourth Circuit in *Kolusz*, and thus constituted a valid border search.  The defendant's motion to suppress the search of the Phone must be denied on this basis, as well.

Although law enforcement could have proceeded with a warrantless forensic examination of the phone, it nevertheless sought a search warrant, and Judge Quereshi found probable cause to issue the warrant.  *See* Ex. B.  Probable cause is a much higher showing than reasonable suspicion, and Judge Quereshi's finding must now be shown "great deference." *United States v. Chandia*, 514 F.3d 365, 373-74 (4th Cir. 2008).  Armed with a search warrant issued by Judge Quereshi, law enforcement agents executed the search warrant on the Phone to look for evidence related to unemployment insurance fraud. The warrant included geo-location data and evidence of user attribution, both of which ultimately led law enforcement officers to the defendant's location in

the United Kingdom.[3] The Court should deny the defendant's motion insofar as it seeks to suppress evidence obtained from a forensic examination taken following the issuance of the search warrant.

But even if the law enforcement needed a warrant to forensically examine the phone (it did not) and the defendant had standing (he does not) and had demonstrated that the warrant lacked probable cause (he has not), the Court should nevertheless deny the defendant's motion because the agents were permitted to rely on the warrant in good faith. There is no allegation that Special Agent Vogel provided knowingly or recklessly false information; the magistrate wholly abandoned his judicial role; or the warrant was so facially deficient as to render reliance unreasonable. *See United States v. Leon*, 468 U.S. 897, 923 (1984) (explaining that the good-faith exception does not apply when the magistrate judge has abandoned his judicial role, the magistrate judge was misled, or the warrant was facially deficient).

For those reasons, even if the defendant had standing, his motion to suppress evidence obtained from the Phone must be denied.

---

[3] As Special Agent Vogel explains in the Affidavit, the officers were originally reviewing the phone for evidence related to the fraudulent passport. However, evidence of Osselle Massaba and the defendant's involvement in unemployment insurance fraud was readily apparent. The plain view doctrine is an exception to the Fourth Amendment's warrant requirement. It holds that when an officer is lawfully in a place from which an object can be plainly seen and the object's incriminating character is immediately apparent, the officer may seize the object without a warrant. *See* Horton v. California, 496 U.S. 128, 136-37 (1990). By analogy, plain view permits officers to make use of evidence seen on a hard drive or device. As the Fourth Circuit has explained, "[o]nce it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied." United States v. Williams, 592 F.3d 511, 522 (4th Cir. 2010).

**Conclusion**

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's Motion to Suppress.

Respectfully submitted,

Erek L. Barron
United States Attorney


By: /s/
Kelly O. Hayes
Christopher M. Sarma
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically filed on November 16, 2023 with notice to counsel of record through the Court's electronic filing system.

By: /s/_____

Kelly O. Hayes
Assistant U.S. Attorney